**THE TINGSTOL COMPANY, Plaintiff,**

v.

**RAINBOW SALES, INC., Defendant.**

**No. 97 C 8867.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 3, 1998.

Michael H. Moirano, Robert B. Christie, Stephen Andrew Wallenfelsz, Nisen & Elliott, Chicago, IL, for Plaintiff/Petitioner.

John A. Tatooles, Steven R. Kathe, John A. Tatooles & Associates, Palatine, IL, Sabato DeVito, Jr., Attorney at Law, Strong Hill, FL, for Defendant/Respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is a motion filed by defendant Rainbow Sales, Inc. ("Rainbow"). This motion is Rainbow's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court denies defendant's motion to transfer venue.

## I. BACKGROUND

Plaintiff, The Tingstol Company ("Tingstol") is a Delaware corporation with its principal place of business in Illinois. Tingstol is a manufacturer of printed circuit boards. Defendant Rainbow is a Florida corporation with its principal place of business in Florida. Rainbow acts as a sales representative for various manufacturers.

In November of 1983, Rainbow initiated contact with Tingstol concerning Rainbow's desire to enter into an exclusive sales agreement with Tingstol. On November 15, 1983, Rainbow and Tingstol negotiated and entered into a verbal agreement in Illinois, whereby Tingstol retained Rainbow to represent it in Florida. Tingstol agreed to pay Rainbow a commission on sales of Tingstol's products in Florida. This agreement was reduced to writing on March 27, 1986, when the parties entered into a written sales agency agreement. This written agreement was modified on January 19, 1993 and again on July 1, 1993. These three written agree-

ments specifically provided that any disputes relating to the agreements were to be construed under Illinois law. On November 19, 1996, Tingstol served Rainbow with a sixty day notice of termination.

A controversy exists between the parties concerning Tingstol's alleged obligation to pay commissions to Rainbow on orders that were placed and processed following Rainbow's termination. Tingstol is seeking a declaratory judgment ordering that it has no obligation to pay Rainbow any sales commissions on orders issued following Rainbow's termination. This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

On July 2, 1998, this court entered an order denying Rainbow's motion to dismiss Tingstol's complaint for lack of personal jurisdiction. Before addressing the merits of this motion, the court notes that Rainbow has failed to file a reply brief to Tingstol's response in opposition to their motion to transfer venue. Given the passage of time since the date Rainbow's reply brief was due to be filed, the court is issuing this opinion without it.

## II. DISCUSSION

### A. Motion to transfer pursuant to 28 U.S.C. § 1404(a)

A transfer under 28 U.S.C. § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D.Ill. 1995). The weight to be accorded each of the above factors is left to the sound discretion of the court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). The party seeking to transfer under § 1404(a) bears the burden of establishing that the transferee court is clearly more convenient. *Id.* 796 F.2d at 219–20.

### 1. Venue is proper in both the transferor and the transferee court

This court has already determined in its July 2, 1998 order that venue is proper in the Northern District of Illinois. Venue is also proper in the Middle District of Florida as that is where Rainbow resides. *See* 28 U.S.C. § 1391(c). Thus, the focal point of this analysis is the convenience of parties and witnesses and the interest of justice, to which this court now turns.

### 2. The convenience of parties and witnesses and the interest of justice

In evaluating a request for transfer under § 1404(a), the court must consider both the private interests of the parties and the public interest of the court. *Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D.Ill.1992). Private interest factors include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum including the courts' power to compel the appearance of unwilling witnesses and the costs of obtaining the attendance of witnesses; and (4) convenience to the parties, their residences and their abilities to bear the expense of trial in a particular forum. *Id.* Public interest factors include: (1) the relation of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for earlier trial. *Hughes v. Cargill, Inc.*, No. 94 C 1072, 1994 WL 142994, at *2 (N.D.Ill. Apr.14, 1994). For the reasons outlined below, the interests weigh in favor of trying this case in the Northern District of Illinois.

#### a. Private interest factors

Rainbow's only argument in favor of transferring this case to the Middle District of Florida is for the convenience of Rainbow's witnesses. The court will address this argument and the other private interest factors below.

### 1. Plaintiff's choice of forum and the situs of material events

■ A plaintiff's chosen forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Vandeveld,* 877 F.Supp. at 1167. But, where the plaintiff's chosen forum is not the situs of material events, it is entitled to less deference. *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1129 (N.D.Ill.1989). As such, it is appropriate to discuss Tingstol's choice of forum together with the situs of material events.

In this case, Rainbow initiated contact with Tingstol in Illinois concerning Rainbow's desire to enter into an exclusive sales agreement with Tingstol. This agreement was negotiated and signed in Illinois and governed by Illinois law. During the lengthy period covered under this agreement, a representative of Rainbow visited Tingstol's facilities in Illinois two to three times per year; these visits were not mandated or requested by Tingstol. Since this action arises from the terms of the agreement consummated in Illinois, the court finds that the situs of the material events occurred in Illinois. Therefore, Tingstol's chosen forum, Illinois, is given deference as it is the situs of the majority of material events.

### 2. Convenience of witnesses and sources of proof

Rainbow's only argument supporting a transfer of venue to the Middle District of Florida is that employee witnesses and business records from United Technology, a Florida company, would be instrumental in resolving this matter. The court addresses this argument below.

■ This private interest factor, the appearance of witnesses, is often viewed as "the most important factor in the transfer balance." *Rose v. Franchetti,* 713 F.Supp. 1203, 1214 (N.D.Ill.1989). This determination should not turn on which party produces a longer witness list. *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994). Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Vandeveld,* 877 F.Supp. at 1168.

Rainbow contends that the meaning of the term "blanket order" is at the center of the controversy which exists between the parties. Rainbow defines blanket orders as those orders procured by Rainbow which continue to generate income long after Tingstol terminated the sales agency agreement. Rainbow asserts that testimony from employees of United Technology, which actually placed these blanket orders, will be critical to the court's understanding of the term "blanket order." Those United Technology personnel who will allegedly testify on Rainbow's behalf are located in Tampa, Florida, as are the business records kept by that company which Rainbow argues will be instrumental in the resolution of this matter.

■ Tingstol counters Rainbow's argument by raising three points. First, Tingstol argues that Rainbow failed to identify the specific personnel or indicate to the court approximately how many United Technology employees that it expected to call at trial. A court need not consider the convenience of unidentified witnesses. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989).

Tingstol next argues that the solicitation or the validity of the blanket orders is not at issue in this case. Tingstol states that the terms of United Technology's orders are set forth on the face of the documents themselves and Tingstol does not dispute the orders' meaning or validity. Tingstol contends that the true issue in this controversy is the interpretation of the Illinois-formed agreement and Rainbow's right under the agreement to continue to collect commissions after its termination by Tingstol. Tingstol argues that employees from United Technology will therefore not be required to testify in this case.

Finally, Tingstol disputes Rainbow's argument that business records kept by United Technology will be instrumental in resolving this case. Tingstol contends that the documents necessary for the resolution of this matter are all available from Tingstol.

The court finds that Rainbow has failed to meet its burden of establishing inconvenience to its witnesses if this case were litigated in Illinois. First, Rainbow has failed to specifically identify the key witnesses to be called. *Midwhey Powder Co.*, 883 F.2d at 1293. Rainbow simply states that "United Technology purchasing, accounting and/or agents" will testify. Further, Rainbow alleges that "the meaning of the term Blanket Order is at the center of the controversy which exists between the parties." However, Rainbow has failed to specify why the meaning of the term blanket order is relevant to the issues in this case. *See Vandeveld*, 877 F.Supp. at 1168 (stating that, in determining whether a particular venue is more convenient to witnesses, a court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case). Finally, Rainbow alleges that business records kept by United Technology in Florida will be instrumental in resolving this matter. Any significance that this may have is counterbalanced by Tingstol's assertion that any and all documents necessary to the resolution of this case are available from Tingstol in Illinois. Therefore, the court finds that Rainbow has failed to meet its burden of establishing that the inconvenience to its witnesses supports a transfer of this case to the Middle District of Florida.

### 3. Convenience of parties

When considering this factor, the court should bear in mind the parties respective residences and their ability to withstand the expenses of litigating in a particular forum. *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F.Supp. 470, 474 (N.D.Ill.1992). Rainbow makes no argument that they will be inconvenienced by litigating this case in the Northern District of Illinois. The court will address this issue nonetheless.

Although transferring this case to the Middle District of Florida may be more convenient for Rainbow, that convenience is gained only by shifting the inconvenience to Tingstol. Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Sage Products, Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D.Ill.1993). Therefore, any inconvenience caused to Rainbow in litigating this case in the Northern District of Illinois does not justify a transfer of venue. The court now turns to the interest of justice prong of § 1404(a).

### b. Public interest factors

Rainbow makes no argument that transferring this litigation to the Middle District of Florida will promote the interest of justice. Nonetheless, the court finds that the public interest factors do not favor either party in the court's assessment of proper venue.

#### 1. Court's familiarity with applicable law

The court recognizes that the Northern District of Illinois is more familiar with Illinois law, which governs this dispute, than the Middle District of Florida. Yet, courts are often called upon to decide substantive legal questions based upon another state's laws. Generally, contract law is not particularly complex. Certainly, Tingstol cannot contend that Illinois contract law is so unique as to be beyond the comprehension of our sister circuit in Florida. While Florida courts do have a strong interest in hearing breach of contract claims which involve their residents, the same can be said of Illinois courts. *See Vandeveld*, 877 F.Supp. at 1165.

#### 2. Speed at which the case will proceed to trial

For the purposes of determining which venue would produce a speedier resolution of this case, the court obtained relevant statistics for the period ending September 30, 1997 in order to make the comparison. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, 1997 FEDERAL COURT MANAGEMENT STATISTICS. Two statistics bear the most relevance in this analysis: (1) the median number of months from filing to disposition; and (2) the median number of months from filing to trial. *Vandeveld*, 877 F.Supp. at 1169. In this case, the median time from filing to disposition was 5 months in the Northern District of Illinois compared to 10 months in the Middle District of Florida, a difference of

5 months. The median time from filing to trial was 24 months in the Northern District of Illinois compared to 18 months in the Middle District of Florida, a difference of 6 months. While the parties may receive an earlier trial in the Middle District of Florida, they are more likely to receive a quicker resolution of their claim in the Northern District of Illinois. Therefore, the court finds that neither the Northern District of Illinois nor the Middle District of Florida will necessarily provide the parties with a substantially speedier resolution of this case.

Thus, the court finds that the public interest factors remain neutral in favoring one forum over the other. However, the private interest factors favor keeping this case in the Northern District of Illinois. The party seeking to transfer under § 1404(a) bears the burden of establishing that the transferee court is clearly more convenient. *Coffey* 796 F.2d at 219–20. The court finds that Rainbow has failed to meet that burden.

## III. *CONCLUSION*

For the foregoing reasons, the court denies Rainbow's motion to transfer venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Rainbow is given until September 22, 1998 to file an answer to Tingstol's complaint.